IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMON K. NELSON
*Appellant*,

v.                                                    Civil Action No. ELH-18-2473

CLINTON A. JACKSON
*Appellee*.

**MEMORANDUM OPINION**

This bankruptcy matter is before the Court for the third time.[1]  In this instance, Raymon

Nelson, M.D., the debtor and appellant, challenges an Order of the United States Bankruptcy Court

issued on August 3, 2018 (ECF 1-1), denying Nelson's discharge, pursuant to 11 U.S.C. §§

727(a)(4) and (a)(7).  *See* ECF 1 (the "Notice of Appeal"); *see also* ECF 1-2 (Bankruptcy Court

docket); ECF 17 (Nelson's Brief).  The Order followed a two-day trial held in July 2018 (Lipp, J.

presiding).  *See* ECF 25-1 (Transcript of July 23, 2018); ECF 25-2 (Transcript of July 24, 2018).

The case is rooted in an adversary proceeding filed by Clinton Jackson against Nelson, the

debtor in a related Chapter 7 bankruptcy proceeding.  Jackson opposes the appeal.    ECF 23

(Jackson's Brief).[2]  Although Jackson is pro se, he is an attorney.  *See* ECF 25-2 at 93-94.  Nelson

---

[1]  *See* ELH-15-3978 (Appeal Filed by Raymon Nelson on December 29, 2015)
("Appeal I"); *id.*, ECF 25 (Memorandum Opinion of July 20, 2016); *id.*, ECF 26 (Order of July
20, 2016, vacating the Bankruptcy Court's award of summary judgment to Jackson and remanding
to the Bankruptcy Court); ELH-18-256 (Appeal Filed by Clinton Jackson on January 25, 2019)
("Appeal II:); *id.*, ECF 12 (Memorandum Opinion of June 25, 2018); *id.*, ECF 13 (Order of June
25, 2016, dismissing the Order of the Bankruptcy Court as premature).

[2]  Jackson attached 472 pages of exhibits in an Appendix to his brief.  The Appendix was
filed only in paper format, making citation to the exhibits quite difficult.  When referring to these
exhibits, I have used the page numbers assigned by Jackson.

has not replied to Jackson's brief, and the time to do so has expired. *See* Fed. R. Bankr. P. 8018(a)(3); Local Rule 105.2(a).

For the reasons that follow, I shall affirm the Bankruptcy Court's Order (ECF 1-1) denying Nelson's discharge.

## I.      Procedural and Factual Background[3]

Nelson, a cardiologist, has an ownership interest in three businesses: Raymon K. Nelson, Classic Cardiology, MD, P.A., Inc. ("Classic Cardiology"); All About the Heart, LLC ("AAH"); and All About the Property, LLC ("AAP"). *See* ELH-15-3978 ("Appeal I"), ECF 25 at 2 (citing Appeal I, ECF 11 at 10, 12). Between June 2005 and April 2010, Nelson employed Jackson as a consultant to perform various services, including the securing of corporate financing. Appeal I, ECF 25 at 2 (citing Appeal I, ECF 22 at 9-10, ¶ 3).

Jackson, a creditor of Nelson, ceased working for Nelson in April 2010. Appeal I, ECF 25 at 2 (citing Appeal I, ECF 22 at 9, ¶ 3). He subsequently filed suit against Nelson and Classic Cardiology in the Circuit Court for Anne Arundel County for breach of contract. *Clinton A.*

---

[3] The facts are drawn in part from my Memorandum Opinion of July 20, 2016 (ECF 25), in Appeal I, and from my Memorandum Opinion of June 25, 2018 (ECF 12), in Appeal II. I have supplemented them, where appropriate, from the record at trial.

A court "may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011). And, a court may also take judicial notice of its own records. *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990). However, the adjudicative facts may "not [be] subject to reasonable dispute," in that they must be "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

*Jackson v. Raymon K. Nelson M.D., P.A. Classic Cardiology, et al.*, Case No. 02-C-11-159529. On September 24, 2013, that court entered judgment in favor of Jackson in the amount of $135,363.72. Appeal I, ECF 25 at 2 (citing Appeal I, ECF 2-4 at 36). The circuit court also awarded Jackson attorney's fees in the amount of $64,147. *Id.* Nelson appealed to the Maryland Court of Special Appeals. Appeal I, ECF 25 at 2 (citing Appeal I, ECF 11 at 10). On May 7, 2019, the appeal was stayed, *see Jackson*, Case No. 02-C-11-159529 (Order of May 7, 2019), pending the resolution of Chapter 11 bankruptcy proceedings of Coastal Cardiology, LLC, a garnishee. *In re: Coastal Cardiology, LLC*, TJC-19-15398, ECF 1 (Bankr. D. Md.).

On November 7, 2013, Classic Cardiology filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Corporate Case"). *In re: Raymon K. Nelson, M.D., P.A. Classic Cardiology, Inc.*, WIL-13-28961, ECF 1 (Bankr. D. Md.). A week later, on November 14, 2013, Nelson filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Individual Case"). *In re: Raymon Kevin Nelson*, WIL-13-29248, ECF 1 (Bankr. D. Md.). Both petitions were subsequently converted to petitions under Chapter 7. *See* Appeal I, ECF 25 at 3 (citing Corporate Case, ECF 180, and Individual Case, ECF 149).

In both cases, Nelson and creditors participated in several meetings mandated under 11 U.S.C. § 341. In the Individual Case, the § 341 meeting was held on December 18, 2013, and continued on March 21, 2014, and April 21, 2014. Individual Case, ECF 7; ECF 49; ECF 57. In the meeting of April 21, 2014, the Trustee directed Nelson to amend his schedules to disclose that he was formerly the trustee of his brother's trust, the Ralph K. Nelson Trust. ECF 23 at A0025-A0026 (Transcript of April 21, 2014 Meeting). After the Individual Case was converted to a

Chapter 7 proceeding on January 26, 2015, a § 341 meeting was held on March 6, 2015. Individual Case, ECF 150.

The Section 341 meeting in the Corporate Case was conducted on December 16, 2013, and continued on March 6, 2014. Corporate Case, ECF 21; ECF 63. Following conversion to Chapter 7 on January 27, 2015, a § 341 meeting was held on March 24, 2015, and continued on April 21, 2015. Corporate Case, ECF 206. In the final meeting of April 21, 2015, Nelson represented to the Trustee that as of January 28, 2015, there were no outstanding accounts receivable in connection with Medicare services. ECF 23 at A0046 (Transcript of April 21, 2015 Meeting).

On May 5, 2015, Jackson initiated an adversary proceeding against Nelson in the Individual Case. *See* Appeal I, ECF 25 at 3.[4] Jackson alleged that "[t]he Debtor knowingly and fraudulently made a false oath or account." Case ELH-18-256 ("Appeal II"), ECF 4-3 at 5, ¶ 12. And, he claimed that "[t]he Debtor concealed property that belonged to the estate with the intent to hinder, delay or defraud the Creditors and/or The Chapter 7 Trustee . . . ." *Id.* ¶ 13. In particular, the complaint alleged, *inter alia*, that notwithstanding Nelson's amendments to his submissions to the Bankruptcy Court, Nelson failed to disclose income obtained from Classic Cardiology and AAH. *See generally id.* at 5-11, ¶¶ 14-26. Further, Jackson alleged that Nelson failed to disclose a judgment debt incurred by AAP. *See id.* at 14-15, ¶ 31. Accordingly, Jackson sought the denial of Nelson's discharge, pursuant to "11 U.S.C. Sections 727(a)(2) and/or (a)(3) and/or (a)(4) and/or (a)(5) and/or (a)(7) . . . ." *Id.* at 17; *see also* Appeal II, ECF 4-2 at 1; ECF 1-2; ECF 4-5 (Nelson's Answer, dated June 8, 2015).

---

[4] A copy of Jackson's Complaint was submitted as an exhibit to Appeal II, titled "Creditor Clinton A. Jackson's Complaint Objecting to Discharge of Debtor." *See* Appeal II, ECF 4-3.

Thereafter, Jackson moved for summary judgment in the adversary proceeding. Appeal I, ECF 2-7 at 1-2. In an Order of December 17, 2015, the Bankruptcy Court granted Jackson's summary judgment motion, and denied the debtor's discharge under 11 U.S.C. § 727(a)(4) and § 727(a)(7). *Id.*, ECF 2-28. Nelson challenged that ruling in an appeal to this Court. *Id.*, ECF 1.

By Memorandum and Order of July 20, 2016, I reversed and remanded for further proceedings. Appeal I, ECF 25; ECF 26. In particular, I concluded that there was a dispute of material fact as to whether Nelson intended to omit or mischaracterize information contained in his financial disclosure forms. *Id.*, ECF 25 at 28-29. Additionally, I concluded that the Bankruptcy Court had impermissibly assessed the credibility of evidence submitted in the context of Jackson's summary judgment motion. *Id.*

Upon remand, Jackson moved for partial summary judgment, asking the Bankruptcy Court, *inter alia*, to deny Nelson's discharge based upon defendant's conduct in violation of 11 U.S.C. §§ 727(a)(3), 727(a)(5) and/or 727(a)(7). Appeal II, ECF 4-31. In the motion, Jackson averred, *inter alia*, that Nelson had "concealed" and failed to "explain" assets in financial disclosure forms related to the Corporate Case. *Id.* at 6-8, 11. Further, Jackson contended that the alleged "concealment" of assets "made it impossible to ascertain the Corporate Debtor's true financial condition." *Id.* at 20. And, Jackson argued that 11 U.S.C. §§ 727(a)(3), 727(a)(5), and 727(c)(7) "do not require the Court's finding of [Nelson's] fraudulent intent" as to any funds he may have concealed. *Id.* at 3.

The Bankruptcy Court held a motion hearing on January 23, 2018. Appeal II, ECF 4-1 (hearing transcript); *id.*, ECF 4-65 (same). By Order of the same date, the Bankruptcy Court denied Jackson's summary judgment motion. *Id.*, ECF 4-52.

Jackson challenged that ruling in an appeal to the District Court on January 25, 2018. *See*
Appeal II, ECF 1; ECF 4-53. By Memorandum and Order of June 25, 2018, I dismissed Jackson's
appeal as premature. Appeal II, ECF 12; ECF 13. And, I remanded the case to the Bankruptcy
Court for further proceedings. *Id.* at 20.

Judge Lipp subsequently held a two-day trial on July 23, 2018 and July 24, 2018.[5] *See In
re: Raymon Kevin Nelson*, WIL-15-228, ECF 247, ECF 248. Nelson, the debtor, was represented
by counsel. ECF 25-1 at 5. Jackson, the creditor, proceeded *pro se*. *Id.*

At trial, the parties called several witnesses. Jackson called Nelson (ECF 25-1 at 9); Judith
Clay, a Certified Public Accountant ("CPA") (ECF 25-1 at 149); and Edward McDuffie, Nelson's
part-time bookkeeper (ECF 25-2 at 7). Nelson called himself (ECF 25-2 at 152), as well as Jackson
(ECF 25-2 at 96); Cheryl Youngblood, his wife (ECF 25-2 at 120); and Troy Emory, Nelson's tax
preparer (ECF 25-2 at 140).

In addition, Judge Lipp considered numerous exhibits that were admitted into evidence in
connection with the Individual Case. ECF 25-1 at 6-33. These included Nelson's "Voluntary
Petition," dated November 14, 2013 (Individual Case, ECF 1), and Nelson's "Statement of
Financial Affairs," amended on June 16, 2014 (*id.*, ECF 80). She also considered Nelson's
schedules, as amended: "Schedule B – Personal Property," dated January 29, 2014 (Individual
Case, ECF 33 at 1-3), again amended on June 16, 2014 (*id.*, ECF 82; *see* ECF 25-1 at 15);
"Schedule C – Property Claimed as Exempt," dated January 29, 2014 (Individual Case, ECF 33 at
4); "Schedule D – Creditors Holding Secured Claims," dated June 16, 2014 (*id.*, ECF 82 at 1);

---

[5] The trial was initially scheduled for February 6, 2018. *See* Appeal II, ECF 4-30 at 2.
However, it seems that Jackson "did not appear" on February 6, 2018. *In re: Raymon Kevin
Nelson*, WIL-13-29248, ECF 227 (correspondence styled "Line Regarding Plaintiff's Absence at
the Hearing on February 6, 2018") at 1. As a result, the trial date was rescheduled for July 24,
2018. *Id.*, ECF 232.

"Schedule F – Creditors Holding Unsecured Nonpriority Claims," dated June 16, 2014 (*id.*, ECF 82 at 2-6); "Schedule G – Executory Contracts and Unexpired Leases," dated June 16, 2014 (*id.*, ECF 82 at 7); "Schedule H – Codebtors," dated June 16, 2014 (*id.*, ECF 82 at 8); "Schedule I – Current Income of Individual Debtor(s)," dated June 16, 2014 (*id.*, ECF 82 at 9); "Schedule J – Current Expenditures of Individual Debtor(s)," dated June 16, 2014 (*id.*, ECF 82 at 10); and "Summary of Schedules," dated June 16, 2014. *Id.*, ECF 82 at 11-13.

In addition, Judge Lipp considered numerous exhibits related to the Corporate Case. These included Classic Cardiology's "Voluntary Petition," amended on January 11, 2014 (Corporate Case, ECF 42); "Statement of Financial Affairs," amended on January 10, 2014 (*id.*, ECF 40); "Schedule B – Personal Property," amended on January 10, 2014 (*id.*, ECF 38 at 4); "Schedule D – Creditors Holding Secured Claims," amended on January 10, 2014 (*id.*, ECF 38 at 8); "Schedule E – Creditors Holding Unsecured Priority Claims," filed November 7, 2013 (*id.*, ECF 1 at 15); "Schedule F – Creditors Holding Unsecured Nonpriority Claims," amended on January 10, 2014 (*id.*, ECF 38 at 11); "Schedule G – Executory Contracts and Unexpired Leases," filed on November 7, 2013 (*id.*, ECF 1 at 23); and "Schedule H – Codebtors," amended on January 10, 2014. *Id.*, ECF 38 at 18.

As noted, in his Individual Case, Nelson amended his schedules on January 29, 2014 (Individual Case, ECF 33), and again on June 16, 2014 (*id.*, ECF 82). *See* ECF 25-1 at 15. He also amended his "Statement of Financial Affairs," dated June 16, 2014 (Individual Case, ECF 80). ECF 25-1 at 15-16. Nelson acknowledged that at the time he amended his Statement of Financial Affairs, he was a trustee of the Adeshoie Family Trust. ECF 25-1 at 16. However, he failed to list the trust on Line 14, "Property held for another person." Individual Case, ECF 79 at 6. When Nelson was asked why he failed to do so, he testified that he "didn't understand" that he

"was supposed to." ECF 25-1 at 17. But, Nelson claimed that the Adeshoie Trust was the "only one" he failed to list. *Id.*

In addition, Nelson testified that he did not list the Ralph Nelson Trust in his Statement of Financial Affairs. ECF 25-1 at 55. Nelson claimed that when he filed for bankruptcy on November 14, 2013, he "wasn't legally responsible for" and "had no access to" the Ralph Nelson Trust. *Id.* However, he acknowledged that he should have listed the trust on Schedule F, "Creditors Holding Unsecured Nonpriority Claims," as amended on June 16, 2014 (Individual Case, ECF 82 at 3). ECF 25-1 at 56.

Nelson explained that following the death of his brother, Ralph Nelson, in 2005, he was appointed the trustee of his brother's trust, the Ralph Nelson Trust. ECF 25-2 at 160. However, a "legal battle" with Ralph's wife ensued, because she claimed that Nelson's appointment as trustee was fraudulent. *Id.* Nelson claimed that he subsequently entered "into a settlement agreement for $100,000" with the wife, and he "turned over all the [trust's] records to another trustee who was appointed by the Court." *Id.* As a result, he claimed that he "had nothing to do with Ralph Nelson Trust" at the time he filed for bankruptcy. *Id.* at 161. And, he notified the new trustee of his bankruptcy filing. *Id.*

On September 15, 2015, in response to a subpoena and document request issued to the Centers for Medicare and Medicaid Services ("CMS") on August 11, 2015, CMS produced, *inter alia*, the billing records of Classic Cardiology from January 2011 through April 21, 2015. ECF 23, A0395 (CMS Letter to Jackson, dated September 15, 2015). For the period of January 28, 2015, to April 21, 2015, the records indicated that Classic Cardiology billed CMS for Medicare services, in the amount of $99,678.00. ECF 23, A0397. In the same period, CMS also paid Classic Cardiology a total of $32,463.96. *Id.*

Nelson was asked about the CMS records. He acknowledged that following the conversion of the Corporate Case to Chapter 7 on January 27, 2015, Classic Cardiology continued to bill CMS. ECF 25-1 at 80-81. Nelson was asked several times whether he told the Chapter 7 Trustee at the § 341 meeting of April 21, 2015, that Classic Cardiology was no longer billing CMS after conversion. *Id.* at 81-82. Nelson responded that he did not "remember" or "recall", but he insisted that "it's true" that Classic Cardiology was no longer billing CMS once Classic Cardiology "went into Chapter 7." *Id.*

Further, Nelson claimed that he did not list any payments under Line 23, "Withdrawals from a partnership or distributions by a corporation," in his Statement of Financial Affairs. ECF 25-1 at 62. Of relevance here, the caption of Line 23 provides: "If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case." Corporate Case, ECF 40 at 7.

Nelson claimed that he did not list any payments because he "didn't understand" that the question asked for all withdrawals made within one year preceding the filing of the bankruptcy petition. ECF 25-1 at 61. When confronted with Classic Cardiology's Bank Account Statements, Nelson acknowledged that he and his wife, Cheryl Youngblood, made numerous withdrawals for personal payments to Auto Zone, Petco, and mortgage services companies, among others. *Id.*; *see also* ECF 23 at A0261-A0362 (Classic Cardiology Bank Account Statements, dated November 1, 2012, to November 30, 2013).

After Jackson rested, Nelson moved for a "Directive Verdict." ECF 25-2 at 49. With Jackson's consent, Judge Lipp dismissed Jackson's claims filed pursuant to 11 U.S.C.

§§ 727(a)(2)(b), (a)(3), and (a)(4)(d). *Id.* at 83-84. As a result, the only remaining claims were those brought under §§ 727(a)(4)(b), (a)(5), and (a)(7). *Id.*

With respect to § 727(a)(5), Judge Lipp granted the motion and entered judgment in favor of Nelson. *Id.* at 85. However, as to §§ 727(a)(4)(b) and (a)(7), she denied the motion. *Id.* She explained, *id.* at 85-88:

> All right. So, the only thing that is left that you are dealing with is 727(a)(4) and (a)(7) and I find that there is sufficient evidence presented to deny the Motion for Directive [sic] Verdict or the Motion to Dismiss at this point.
>
> There are a multitude of non-disclosures in the Bankruptcy Schedules. There – and there is both in the individual case and in the corporate case.
>
> As I described in the Motion for Summary Judgment, the ones that really, really troubled me – and again there is just a multitude of them – is the failure to disclose in the corporate case transfers that were made within a year to the benefit of Ms. Youngblood and to the benefit of the Debtor. That is all of those payments that the Debtor was, I guess, capturing as income, if that was what he was doing or whatever, needed to be either listed by the Debtor as his income and still would have listed disclosures to Ms. Youngblood. She is an insider.
>
> You have to go through the entire year. Payments were made for her car by the corporate entity. Those payments needed to be listed. It is on behalf of an insider. The payments that remain on the mortgage needed to be listed, itemized. All payments with a year to the Debtor.
>
> If you wanted to put a little note there that it was also – he used it as income or whatever, [he] could have done that. But he did not disclose an[y] of it.
>
> Those are potential fraudulent conveyances that a Trustee has the right to investigate and potentially sue those people to collect because they benefitted them. If those disclosures were not made I am very concerned that the—
>
> This Ralph Nelson Trust was not listed as a creditor. Listing it as a loss does not give a creditor notice of the bankruptcy. This appeared to be a situation where it would potentially, I do not know for a fact, have been a non-dischargeable debt. And it was not disclosed. They had the right to participate in the bankruptcy case and to file a complaint. Now, maybe they backed off because Mr. Jackson has aggressively pursued discharge and with a discharge then maybe – nobody's debt would be discharged.

So, it maybe [sic] they backed off if in fact they know about it, I would assume by now somebody has told them, but they needed to have direct information that was never provided.

*       *       *

And I find that those lack of disclosures are reckless disregard for the truth. They are sufficient to raise enough of a question and then to pass the responsibility of the Debtor to come back and show that it was not. To explain it. To explain his conduct.

Following Judge Lipp's ruling on the motion, Nelson called several witnesses. As noted, they included Jackson (ECF 25-2 at 96); Cheryl Youngblood, Nelson's wife (ECF 25-2 at 120); and Troy Emory, Nelson's tax preparer (ECF 25-2 at 140). In addition, Nelson testified again. ECF 25-2 at 152.

Youngblood stated that in 2013, she worked as the office manager of her husband's business, Classic Cardiology. ECF 25-2 at 121. As office manager, she recorded Classic Cardiology's financial transactions, which included inputting checks and paying bills through a computer program called "Quickbooks." *Id.* at 122. When asked about the office's bills, Youngblood acknowledged that she paid the couple's personal "debt" and home mortgage out of Classic Cardiology's bank account. *Id.* at 123-24. But, Youngblood maintained that Nelson "did not" instruct her to make those payments. *Id.* at 124. She further claimed that she did not pay for any additional personal expenses out of the company's bank account. *Id.*

Emory testified that Nelson hired him to prepare Nelson's 2013 personal and business tax returns as well as the "monthly operating reports" of Classic Cardiology. *Id.* at 141-42. In preparing Nelson's business tax returns, Emory primarily relied on the expenses listed in Quickbooks. *Id.* at 143.

Nelson testified that when he filed for bankruptcy on November 14, 2013, he was "under duress because Mr. Jackson had garnished all of [his] accounts." *Id.* at 154. Nelson added that he

11

filed for bankruptcy because he "was being sued" and was "under pressure." *Id.* at 157. He explained, *id.*: "Clint Jackson had had a yellow piece of tape wrapped around my house. All of my cars were wrapped in yellow. Marshals were knocking on my door on his behalf. I was under pressure. I couldn't even get into my house." Nelson maintained that, in filling out his schedules, he "wanted to be as truthful as possible." *Id.*

At the conclusion of the evidence, Judge Lipp said, ECF 25-2 at 217-220:

I have already indicated that there were a series of non-disclosures, clearly the debtor knows how to amend because there were amendments.

\* \* \*

He again didn't list the Ralph Nelson Trust as a creditor. Did add it to the mailing matrix list later so that he did give notice but it wasn't listed and I always find that troubling but not as troubling where at least he has gotten notice. He did admit – the debtor admitted that he didn't list the actual Adeshoie Trust which he was required to do. He was custodian. It was an asset and in his custody and control. Again never amended schedules, don't know why. Again he knows how to amend his schedules.

As to Nelson's accounts receivable, Judge Lipp stated, ECF 25-2 at 221-23:

. . . The lack of disclosure in the corporate case of accounts receivable is befuddling to me. Holding off on filing a claim because you think the money is going to be attached, doesn't mean that the claim doesn't exist. The services were provided. It was – you intended to bill it, you just held off billing it because you were afraid that your accounts were going to be attached, from what I heard in the testimony.

There were accounts receivable that were owed to Classic Cardiology. . . . I am more concerned about the omissions. Unless it was something that was listed that was deceived somebody [sic]. It was fraudulent.

And the omission of the accounts receivable again makes no sense to me. It – the services are performed and when the services are performed that means you are entitled to it.

\* \* \*

. . . The receivables weren't listed. Didn't show the nature of what the assets were intentionally for this company and what the receivables were. And it was done for a purpose that was somewhat nefarious that is because you didn't want to bill because you didn't want Mr. Jackson to get his money.

So I didn't – I don't agree with the testimony and I find it not credible that one could believe that it is not an account receivable when services were performed and held off on billing.

And, with respect to Nelson's payments to his wife, Youngblood, Judge Lipp said, ECF 25-2 at 223-28:

The most important thing and this is something that I said all the way through, it is extremely troubling to me. Were the payments that were made on behalf of Ms. Youngblood and the debtor the mortgage, the car, and for anything else because I think there were some other items that were listed that looked like they were personal items, but whether that is or not, I have a mortgage which was significant over $6,000 a month, most times I think one of them said $5,900 and others said $6,200. It seemed to vary and then the Lincoln.

These are payments that were made to an insider within a year in a corporate case without disclosing. Now at the meeting of creditors, there was some statement that these payments were being made. But one never quantified them and fraudulent conveyance or preferences are assets of the estate that either the debtor would have had to have pursued as the debtor in possession or it would have been the basis for non-pursuant [sic], maybe the basis for reporting to a trustee.

And in this particular case, the case got converted. So therefore, the trustee had the right to pursue it and why the trustee didn't maybe because they didn't have accurate information, I don't know. It may be because if they did, all the money would have gone to his ex-wife and maybe is a priority and therefore they didn't want to do it. Don't know. I don't know why the trustee did or did not pursue it. But it was – this was a significant asset in my view that the trustee had the right to pursue and I don't – I honestly don't know that if the trustee had had the information and it is in a corporate case whether the trustee would have pursued the payments within a year. And they were significant payments and never amended the schedules.

As I said, he knows how to amend the schedules because he did amend the schedules several times. He just didn't provide this significant accurate information which I know was discussed by the trustee, I believe was discussed by this Court, on prior occasions because part of what we were dealing with on a conversion were some of these issues. And it was never amended. And that is very, very troubling to me.

So those are the withdrawals from the corporation within a year immediately proceeding [sic] the filing of the petition. There are financial statements that were apparently not disclosed, it just adds to it. That in itself would not have caused me concern. But when you add all of these things up and again with the failure to disclose – my big issue, failure to disclose potential fraudulent

13

conveyances and preferences was one of the major issues that I was concerned about.

\* \* \*

I know that again he kept testifying that he didn't intend to decide [sic], the problem is saying so doesn't make it so when there are multitude of non-disclosures and again, I don't understand why the debtor never amended. I know he has had several attorneys and I know he certainly has – this case has been sitting here for years. It was filed in 2013 and it got converted in 2017. Any why at some point in time the debtor didn't just sit down and figure this out, bank statements were here. The bank statements are available.

So the payments would be clear, they were easy to find out based on the bank statements but the trustee didn't have them. Those weren't given to the debtor – given by the debtor to the trustee at least I didn't see anything, any record of them providing this very important information to the trustee so that a trustee could in fact pursue these claims. $6,000 a month. We know that there were several of them. And it would have been for an entire year but I don't know but there were several deductions that we saw for the – for approximately $6,000 at least – it could have been more.

And then same thing for the Court. Now the debtor have may have been able to come back, we don't know, and argue this was some source of income or whatever. But it wasn't revealed with the trustee to have enough information to pursue it or make a determination that the trustee was going to pursue it or could pursue it or didn't pursue it. I don't have any evidence that that happened or didn't happen and I again, I think it is important in a bankruptcy schedule that those assets needed to be [disclosed] – I think it is a reckless disregard for the truth.

\* \* \*

. . . . It is not the burden of the trustee or creditors to have to go and investigate. The hallmark of bankruptcy is complete disclosure. You put it on the schedules, you have disclosed it. If you need to put a little explanation, you put an explanation. But not disclose it, is a travesty because it – if you don't list things on the schedules, the system doesn't work.

The system is set up for the debtor under oath, that he signed under oath the schedules were accurate and he knew they weren't at some point in time because he had already been at the 341 and he had already been told that he needed to amend, so he knew at that point that they weren't true and why he wouldn't amend it, I don't – I just don't know. Why he didn't – because it is his burden to do the investigation. It is his burden to – you know his wife was doing the accounts, certainly could have gone to his wife at some point and said hey, show me the bank

14

statements. Show what payments are that you made that were benefitted to you, show me the payments like what benefitted him.

And it wasn't done. That is a carelessness, a reckless disregard for the truth. And the system shuts down when debtor's don't provide complete and full information so that – not every creditor goes to the meeting of creditors. If you put it on the schedules, then a creditor can go look at it because it is on the docket and they can then investigate and decide whether or not there is something they want to do or need to do to protect themselves.

But when you don't list it, it is not disclosed and they don't know. And that is what happened here.

Thereafter, Judge Lipp denied Nelson's discharge based on 11 U.S.C. §§ 727(a)(4) and (a)(7). ECF 25-2 at 228. She stated: "Again I believe the debtor had ample, ample opportunity to amend his schedules, to list what he knew – what he knew was wrong . . . ." *Id.* at 228-29. This appeal followed. ECF 1.[6]

Nelson presents three issues on appeal, as follows: *See* ECF 17 at 2.

1. Did the Court [e]rr when it determined the defendant Raymon Nelson's omission of his role as Trustee of Trust was tantamount to fraud under 11 USC § 727(a)(4) and 11 USC § 727(a)(7) without assessing the materiality of the omission[?]

2. Did the Court [e]rr when it substituted its judgment in place of the Chapter 7 Trustee in determining the characterization of a transaction as an Account Receivables pursuant to a 11 USC § 547 analysis was in fact an omission[?]

3. Did the Court [e]rr when it substituted its view of the Chapter 7 Trustee's Decision not to seek [to] Avoid Preferential Transfers under 11 USC § 547[?]

Additional facts are included in the Discussion.

---

[6] On August 27, 2018, Jackson moved to dismiss the appeal, pursuant to Fed. R. Bankr. P. 8002(a), on the ground that it was untimely filed. ECF 5. By Order of March 11, 2019 (ECF 26), I dismissed the motion.

## II.     Standard of Review

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . . "); *see also Robertson v. Grigsby*, CCB-17-3519, 2018 WL 1709113, at *1 (D. Md. Apr. 6, 2018) (citing 28 U.S.C. § 158(c)(2)); *HeiTech Servs., Inc. v. Rowe*, GJH-17-1319, 2017 WL 4838750, at *2 (D. Md. Oct. 24, 2017) (same); *Conrad v. Schlossberg*, 555 B.R. 514, 515-16 (D. Md. 2016) (same). The district "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted).

The Fourth Circuit has said: "A district court abuses its discretion when it (1) acts 'arbitrarily, as if neither by rule nor discretion,' (2) fails to 'adequately . . . take into account judicially recognized factors constraining its exercise' of discretion, or (3) rests its decision on 'erroneous factual or legal premises.'" *United States v. Alvarado*, 840 F.3d 184, 188-89 (4th Cir. 2016) (quoting *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)); *see also Robertson*, 2018 WL 1709113, at *1. As noted, the same standard applies to the bankruptcy court. *See* 28 U.S.C. § 158(c)(2).

The district court reviews the bankruptcy judge's findings of fact under the "clear error" standard. *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013); *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see, e.g.*,

*Andrews v. America's Living Ctrs., LLC*, 827 F.3d 306, 312 (4th Cir. 2016); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). In contrast, the bankruptcy court's conclusions of law are subject to *de novo* review. *In re Taneja*, 743 F.3d at 429; *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).

### III.    Discussion

### A.    Discharge

Nelson challenges the Bankruptcy Court's decision under 11 U.S.C. §§ 727(a)(4) and (a)(7), denying his request for a discharge.

A Chapter 7 debtor is generally entitled to a discharge "from all debts that arose prior" to the filing of the bankruptcy petition. 11 U.S.C. § 727(b). A discharge in Chapter 7 bankruptcy "offers the debtor 'a fresh start unhampered by the pressure and discouragement of preexisting debt.'" *Robinson v. Worley*, 849 F.3d 577, 583 (4th Cir. 2017). But, this privilege is attainable only by the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *see Robinson*, 849 F.3d 577 (denying debtor a discharge for "knowingly and fraudulently" making "a false oath or account" under 11 U.S.C. § 727(a)(4)) (citation omitted).

By its nature, the Bankruptcy Code "invokes competing considerations." *In re Tully*, 818 F.2d 106, 110 (4th Cir. 1987); *see also Robinson*, 849 F.3d at 583. On the one hand, bankruptcy law "elevates 'substantial justice' over 'technical considerations.'" *Robinson*, 849 F.3d at 583 (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)). Indeed, "'[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.'" *In re Tully*, 818 F.2d at 110 (citation omitted). In that vein, "the statute is ordinarily construed liberally in the debtor's favor." *Robinson*, 849 F.3d at 583 (citing *Smith v. Jordan (In Re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008)).

17

On the other hand, the Bankruptcy Code "reflects the equitable doctrine of unclean hands."

*Robinson*, 849 F.3d at 583; *see also Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th

Cir. 2002). The law's "general structure" and "specific provisions" authorize "bankruptcy courts

to prevent the use of the bankruptcy process to achieve illicit objectives." *In re Kestell*, 99 F.3d

146, 149 (4th Cir. 1996). "The implicit bargain for a discharge is simple: candid, good faith

disclosure of the debtor's financial affairs in return for the freedom of a clean slate." *Id.* (citing *In

re Kestell*, 99 F. 3d at 149).

Of relevance here, 11 U.S.C. § 727(a) provides that a bankruptcy court "shall grant the

debtor a discharge." *Id.* § 727(a). However, there are several exceptions enumerated in § 727 in

which a debtor is not entitled to relief. *Id.* § 727(a)(1)-(10).

In this case, the Bankruptcy Court denied Nelson's discharge pursuant to the "false oath"

exception, set forth in 11 U.S.C. § 727(a)(4), and the "insider" provision, found in 11 U.S.C.

§ 727(a)(7). Section 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> \*       \*       \*
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account; . . .

To contravene § 727(a)(4), "'the debtor must have made a statement under oath which he

knew to be false, . . . he must have made the statement willfully, with intent to defraud,' and the

statement 'must have related to a material matter.'" *Robinson*, 849 F.3d at 583 (quoting

*Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (1987)). Indeed, the "purpose of the

false oath exception is to ensure that 'those who play fast and loose with their assets or with the

reality of their assets or with the reality of their affairs' do not profit from the liberating shelter of

the Bankruptcy Code." *Robinson*, 849 F.3d at 583.

Whether a debtor has made a false oath is a question of fact, and a bankruptcy court's factual findings may not be set aside unless clearly erroneous. *Williamson*, 828 F.2d at 251. This standard ensures that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994).

Section 727(a)(7) is also relevant. It provides, in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

\*         \*         \*

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider; . . . .

The statutory definition of "insider" is pertinent. *See* 11 U.S.C. § 101(31). "'An insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny.'" *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996) (citation omitted). Where, as here, the debtor is an individual, the term "insider" is defined to include, in pertinent part, a "relative of the debtor." 11 U.S.C. § 101(31)(A). The provision "serves to protect the integrity of the [bankruptcy] system as a whole by defeating the discharge of those who are shown to have engaged in improper conduct in an earlier, related case." *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996).

### B.    Trust Interests

Nelson contends that the Bankruptcy Court erred when it determined that Nelson's omission of trust interests from his bankruptcy petition and schedules was "tantamount to fraud under 11 [U.S.C.] § 727(a)(4) and 11 [U.S.C.] § 727(a)(7) without assessing the materiality of the omission." ECF 17 at 12. Nelson avers that he did not omit the trust interests because "he provided

notice of the Bankruptcy to the beneficiaries of the Trust and their legal counsel." *Id.* at 13. In addition, "[t]he Trustee was made aware of the Trust and elected not to pursue it any further." *Id.* at 13-14. And, even if Nelson omitted the trust interests, he asserts that the omission was immaterial because "[a]t trial, no evidence was introduced indicating the lack of disclosure, if any, hindered the Chapter 7 trustee." *Id.* at 13.

Jackson responds that the Bankruptcy Court properly "determined that [Nelson's] omission of his role as Trustee of a Trust was [a] false oath[] . . . tantamount to fraud under 11 U.S.C. [§§] 727(a)(4) and/or 727(a)(7)." ECF 23 at 40.

Under § 727(a)(4), to be denied a discharge, "'the debtor must have made a statement under oath which he knew to be false, . . . he must have made the statement willfully, with intent to defraud,' and the statement 'must have related to a material matter.'" *Robinson*, 849 F.3d at 583 (quoting *Williamson*, 828 F.2d at 251); *see also In re Abell*, 549 B.R. 631, 675 (Bankr. D. Md. 2016). The Bankruptcy Code is clear that "any fraudulent misstatement 'in or in connection with the case' is sufficient grounds for the denial of a discharge." *Robinson*, 849 F.3d at 587 (quoting 11 U.S.C. §724(a)(4)(A)). Indeed, a single false statement account or oath is all that is required for the bankruptcy court to deny a discharge under § 724(a)(4)(A). *Robinson*, 849 F.3d at 587 (citing *Schreiber v. Emerson (In re Emerson)*, 244 B.R. 1, 28 (Bankr. D.N.H. 1999)).

Notably, "a false statement made by mistake or inadvertence is not a sufficient ground upon which to base the denial of discharge." *Robinson*, 849 F.3d at 585. But, "'reckless indifference to the truth constitutes the functional equivalent of fraud.'" *Id.* (quoting *In re Arnold*, 369 B.R. 266, 272 (Bankr. W.D. Va. 2007)). "A debtor acts with the requisite intent to deceive when his statement is 'incompatible with his own knowledge.'" *Robinson*, 849 F.3d at 585 (quoting *Saslow v. Michael (In re Michael)*, 452 B.R. 908, 919 (Bankr. M.D.N.C. 2011)).

"The threshold to materiality is a low bar." *Robinson*, 849 F.3d at 587. At a minimum, a misstatement must "have the potential to prejudice the rights of creditors." *Id.* Of pertinence here, "a misstatement is material if it is 'relevant to the debtor's business transactions, estate and assets.'" *Id.* (quoting *Farouki*, 14 F.3d at 251).

The Bankruptcy Court concluded that Nelson exhibited a reckless indifference to the truth in failing to disclose material trust interests. It pointed to the "multitude of non-disclosures in [Nelson's] Bankruptcy Schedules," specifically as to the Adeshoie Trust and Ralph Nelson Trust. ECF 22-5 at 85.

The Bankruptcy Court did not credit Nelson's testimony, noting that Nelson failed to amend his disclosures even after the court and the trustee had advised Nelson to disclose such interests. *Id.* at 87-88, 169-70; *see also* ECF 23 at A0025-A0026. In addition, the Bankruptcy Court found it "troubling" that Nelson added the Ralph Nelson Trust to "the mailing matrix list" to provide notice to the relevant creditor but did not list the trust on his schedules. *Id.* at 220. And, Nelson "never amended [his] schedules" to disclose the Adeshoie Trust, even though he was the trust's "custodian." *Id.*

Moreover, the Bankruptcy Court determined that Nelson's omissions regarding his trust interests were material as they were relevant to his "'business transactions, estate and assets.'" *Robinson*, 849 F.3d at 587 (quoting *Farouki*, 14 F.3d at 251). With respect to the Adeshoie Trust, the court emphasized that the trust is an asset "in *his* custody and control." ECF 25-2 at 220 (emphasis added). But, Nelson "never amended [his] schedules," despite knowing "how to amend his schedules." *Id.*

The Bankruptcy Court was entitled to conclude from the record that Nelson's failure to disclose his trust interests was "'incompatible with his own knowledge." *Robinson*, 849 F.3d at

586. Although an error or omission "may have been the result of an innocent mistake," Nelson's

multiple omissions "evidences a pattern of reckless and cavalier disregard for the truth serious

enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)." *In re Hatton*, 204

B.R. 477 (E.D. Va. 1997) (quotation marks and citation omitted). As the court said in *United*

*General Title Insurance Company v. Karanasos*, 561 B.R. 316, 330-331 (E.D.N.Y. 2016) (quoting

*In re Bressler*, 387 B.R. 446, 462 (Bankr. S.D.N.Y. 2008)):

> "[A]n occasional omission of facts is seldom sufficient to establish a claim of false
> oath. Numerous omissions in statement of financial affairs and schedules taken
> together warrant the conclusion of a reckless disregard for the truth by the debtor.
> Such reckless disregard for the truth is recognized to be equivalent to fraudulent
> intent to commit a false oath. Numerous omissions that display a pattern of
> misleading conduct are sufficient to establish a fraudulent false oath."

Nelson's contention that the Bankruptcy Court failed to assess the materiality of his

numerous omissions is unavailing. As the Fourth Circuit observed in *Robinson*, 849 F.3d at 587,

"'The subject matter of a false oath is material . . . if it bears a relationship to the bankrupt's

business transactions or estate.'" (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618

(11th Cir. 1984) (per curiam)) (internal quotation marks omitted). Here, Nelson's "multitude" of

omissions concerning his trust interests were "undeniably 'relevant' to his estate and assets"

because he agreed to manage and hold the property of the beneficiaries. *Robinson*, 849 F.3d at

587.

Accordingly, I find no reason to disturb the Bankruptcy Court's conclusion that Nelson's

pattern of omissions concerning his trust interests was material and constituted a reckless

indifference to the truth.

### C.     Accounts Receivable

The Bankruptcy Court determined that Nelson was entitled to payment of "performed"

Medicare services and was required to list the "outstanding" claims as "account[s] receivable."

ECF 25-2 at 222. However, he failed to do so. *Id.* The Bankruptcy Court rejected Nelson's testimony that he believed the outstanding claims were not "account[s] receivable" when "services were performed" and he "held off on billing" the claims. *Id.* The Bankruptcy Court further concluded that Nelson's omission "was done for a purpose that was somewhat nefarious" because Nelson "didn't want Mr. Jackson to get his money." *Id.* at 223.

According to Nelson, the Bankruptcy Court erred by determining that Nelson's "potential claims transaction[s were] Accounts Receivable and therefore an omission." ECF 17 at 16. Under 11 U.S.C. § 547(a)(3), a "receivable" is defined as the "right to payment, whether or not such right has been earned by performance."

Nelson argues that "he did not have any Accounts Receivables because he did not file" Medicare claims for payment of medical services he provided as a physician, pursuant to 42 C.F.R. § 424.5(a)(5).[7] ECF 17 at 17. Because Nelson "stopped billing," he asserts "there was nothing to report" in his schedules. *Id.* at 16.

Nevertheless, Nelson concedes that a debtor's omission of an accounts receivable is material. *Id.* However, he argues that such an omission "does not constitute a false oath unless there is evidence" that the omission "was calculated to mislead the trustee and creditors or was part of a larger pattern of reckless indifference to the truth by the Debtors." *Id.* (citing *Spencer v. Hatton (In re Hatton)*, 204 B.R. 470, 475 (Bankr. E.D. Va. 1996), *aff'd*, 204 B.R. 477 (E.D. Va. 1997)).

---

[7] 42 C.F.R. § 424.5(a)(5) provides, in relevant part: "(a) As a basis for Medicare payment, the following conditions must be met: (5) Claim for payment. The provider, supplier, or beneficiary, as appropriate, must file a claim that includes or makes reference to a request for payment . . . ."

Jackson disagrees with Nelson, asserting that the Bankruptcy Court "did not substitute its' [sic] judgment in place of the Chapter 7 Trustee when it found that the Defendant's knowing omission of substantial accounts receivable from the federal government, [Nelson's] largest provider/source of income, was tantamount to fraud under 11 U.S.C. [§§] 727(a)(4) and/or 727(a)(7)." ECF 23 at 40.

As the finder of fact, the Bankruptcy Court was tasked with assessing the credibility of witnesses. The court expressly determined that Nelson's testimony was "not credible." ECF 25-2 at 223. As the Fourth Circuit noted in *Williamson*, 828 F.2d at 252, "The problems inherent in ascertaining whether a debtor has acted with fraudulent intent are obvious," because "the debtor will be the only person able to testify directly concerning his intent" and "'is unlikely to testify directly that his intent was fraudulent[.]'" (quoting *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985)). Thus, "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor," and "deference to the bankruptcy court's factual findings is particularly appropriate." *Williamson*, 828 F.2d at 252.

In reviewing the record, it is clear that the Bankruptcy Court did not err in finding that Nelson's Medicare claims constituted accounts receivable under 11 U.S.C. § 547, and that his failure to list them in his schedules constituted a false oath under 11 U.S.C. § 727(a)(4). The omission of Nelson's Medicare claims for services he already performed "would have been advantageous" to Nelson and "detrimental" to his creditors, because any payment received may have been subject to the claims of his creditors. *Williamson*, 828 F.2d at 252. Therefore, I am satisfied that the Bankruptcy Court properly determined that Nelson's failure to list accounts receivable in connection with his Medicare claims evidenced, at a minimum, a reckless disregard for the truth.

### D.    Insider Payments

As discussed, *supra*, 11 U.S.C. § 727(a)(7) authorizes a denial of discharge if the debtor "committed any act specified" in § 727(a)(2), (3), (4), (5), or (6), "in connection with another case . . . , concerning an insider[.]"  11 U.S.C. § 727(a)(7).  In this case, the Bankruptcy Court determined that Nelson's wife, Youngblood, was a "relative of the debtor," and thus she was an "insider," as defined under 11 U.S.C. § 101(31)(A)(i).  ECF 25-2 at 224.  Further, the Bankruptcy Court found that, in the year prior to filing his bankruptcy petition, Nelson made "significant payments" to his wife in connection to a corporate case.  *Id*; *see also* ECF 23 at A0261-A0362.  It concluded that Nelson's failure to disclose the payments constituted a false oath, which warranted a denial of discharge under 11 U.S.C. §§ 727(a)(4) and (a)(7).  ECF 25-2 at 228.

Nelson argues that the payments to his wife were not "preferential transfers" under 11 U.S.C. § 547.  *Id*. at 18-19.  In particular, he argues that the Bankruptcy Court "abused its discretion when it determined" that the payments were "a significant asset."  *Id*. at 19.  Nelson maintains that he revealed all "Insider Payments . . . to the Chapter 7 Trustee" and presented "Bank Statements . . . to the Trustee for review," but the "Trustee elected 'not' to pursue the debtor further."  *Id*. at 17-18.

Section 547 states, in relevant part:

(a) In this section—
(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made
    (3) made while the debtor was insolvent
    (4) made—
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

25

Pursuant to 11 U.S.C. § 547(b)(4)(B), "[a] trustee in bankruptcy may avoid transfers made up to one year prior to the filing of the bankruptcy petition if the transferee 'at the time of such transfer was an insider.'" *Butler v. David Shaw, Inc.*, 72 F.3d 437, 441 (4th Cir. 1996) (quoting 11 U.S.C. § 547(b)(4)(B)) (emphasis omitted).

Nelson contends that "[a]ll of the elements of a preferential recovery action under section 547(b) must be proved by admissible evidence." ECF 17 at 18. But, he contends that no "such evidence was presented at trial to conclude the Trustee deemed payments made to an insider . . . was an avoidable transfer." *Id.* Further, Nelson argues that he was "not insolvent during bankruptcy and the Appellee provided no evidence to indicate insolvency." *Id.* at 19. He concludes that "it is apparent from the Trustee's decision not to pursue any insider transaction . . . that an avoidable preference was not available under the rules." *Id.*

Appellant's reliance on § 547 is a red herring. As mentioned, the Bankruptcy Court denied Nelson's discharge pursuant to §§ 727(a)(4) and (a)(7), based on Nelson's omission of payments made to an insider within one year prior to the date of the filing of his petition, in connection with another case. ECF 25-2 at 224. In denying a discharge under §§ 727(a)(4) and (a)(7), it was unnecessary for the Bankruptcy Court to consider whether Nelson's payments to an insider constituted an avoidable transfer under § 547.

At the conclusion of the trial, the Bankruptcy Court acknowledged that it did not know "why the trustee did or did not pursue" the payments. ECF 25-2 at 224. However, it determined that the payments were a "significant asset" and Nelson "never amended the schedules" to include the payments. *Id.* It emphasized that there was no "record" of Nelson "providing this very important information to the trustee so that a trustee could in fact pursue these claims." *Id.* at 226. And, it found these omissions particularly "troubling," given that Nelson "kn[ew] how to amend

the schedules because he did amend the schedules several times" but "didn't provide this significant accurate information." *Id.* at 225.

I disagree with Nelson that the Bankruptcy Court erred when it "substituted its view" of the trustee's decision not to avoid the payments under 11 USC § 547.  ECF 17 at 7.

## IV.   Conclusion

The Fourth Circuit has emphasized: "Denial of discharge is a severe sanction and should be reserved for instances in which a debtor contravenes the basic compact underlying the Code's promise of a 'fresh start.'"  *Robinson*, 849 F.3d at 588 (quoting *Farouki*, 14 F.3d at 249).  In view of Nelson's "multitude of non-disclosures," ECF 25-2 at 226, this is "one of those rare cases." *Robinson*, 849 F.3d at 588.

Accordingly, I shall AFFIRM the Bankruptcy Court's Order (ECF 1-1) denying discharge to Nelson under 11 U.S.C. §§ 727(a)(4) and (a)(7).

An Order follows, consistent with this Memorandum Opinion.


Date: July 12, 2019                                      _____/s/_____

                                                        Ellen Lipton Hollander
                                                        United States District Judge